No. 633 July 9, 2025 841

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. R. H.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

A. R. H.,
*Appellant.*

Washington County Circuit Court
22JU02227; A182433

Thomas A. Goldman, Judge pro tempore.

Submitted May 28, 2025.

Erica Hayne Friedman and Youth, Rights & Justice filed
the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman,
Solicitor General, and Patricia G. Rincon, Assistant Attorney
General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and
Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Adjudicated youth and current Oregon Youth Authority (OYA) ward appeals the juvenile court's dispositional order authorizing his placement in a youth correctional facility (YCF, MacLaren) after multiple probation violations which he argues were not serious enough to warrant such a consequence and amounted to an abuse of the juvenile court's discretion. We agree that, as youth argues, dispositional decisions by the juvenile court must be evaluated in light of the inherent harms of incarcerating young people; however, because the juvenile court's findings reflect that it considered youth's need for high levels of structure to be successful and youth's history of non-compliance—of varying levels of seriousness—with probation conditions designed to keep youth safe, we determine that the juvenile court did not abuse its discretion in committing him to MacLaren. The court was skeptical about the possibility that he could be supervised at home because mother was involved in and aided youth in violating his probation. We affirm.

In May 2022, the Washington county juvenile department filed a petition alleging that youth was within the jurisdiction of the court for multiple acts that would constitute serious felonies if committed by an adult, including first-degree robbery and unlawful use of a weapon. Youth was placed on release conditions. After placements in home with each parent and at Harkins House, along with a string of release condition violations and stints in detention, in December 2022, youth was adjudicated on most of the allegations in the petition. In January 2023, he was placed on probation under juvenile department supervision. After several technical violations of probation, in February, the court committed him to the custody of OYA. That dispositional order was reversed and remanded for the trial court to make appropriate findings pursuant to ORS 419C.478(1). *State v. A. R. H.*, 335 Or App 536 (2024) (nonprecedential memorandum opinion). Youth was placed in a highly structured OYA placement in the youth correctional center (YCC) program at Northern Oregon Regional Corrections (NORCOR).

This case involves the juvenile court's decision to place youth in MacLaren after he twice violated the YCC

placement's rules during community visits with his mother in August 2023. YCC encouraged community visits with family, and required conditions for safety during those visits. Youth was required to be in a pre-approved location, not enter Washington County, and to be continuously supervised by mother on visits with her.  One violation occurred because youth went camping instead of to the pre-approved hotel. In the other, he went to the mall in Washington County, and while there, he was unsupervised and had police contact after a verbal argument with another youth who had a gun, leading police to have concerns about gang violence at the mall. Although he did not admit to the trespass and no trespass charge was filed, youth admitted that he did have police contact and failed to report that to his probation officer.

We evaluate the juvenile court's dispositional decision regarding placement of a delinquent youth for abuse of discretion. *State v. B. Y.*, 371 Or 364, 383, 537 P3d 517 (2023) (discussing juvenile court's "discretionary authority to determine the appropriate disposition based upon the specific circumstances and rehabilitative needs of the youth in each case"). Under that standard, this court will reverse only if the juvenile court's discretionary determination is not a legally permissible one. *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012).

Youth argues that the juvenile court's decision is "clearly against reason and the evidence." However, the juvenile court explained its decision at length, citing its history with youth, the continuing violations, its ongoing concerns about substance use, and the fact that OYA had sought an additional highly structured placement at J5 for youth, but was declined because of youth's gang ties. Youth argues that the juvenile court should have placed him, either temporarily while another structured placement was sought, or permanently with his father, and that to commit him to the YCF was an abuse of discretion. The court acknowledged that father had not assisted youth to break any rules but decided that placement with either parent did not provide the structure youth needed to have success, stating "You need a level of structure in your life that your parents have failed to give you." It continued:

"But when we've got [your probation officer] saying, 'I don't have a placement or a program for you,' and I recognize that the structure and the supervision in the community has failed in all those times I talked about, we need to give you somewhere to succeed. And if it means that they are running screenings at other correctional placements, I would encourage that because no one wants you hurt, and everyone wants to see you succeed just like with NORCOR. The rate at which you succeed, the rate at which you get paroled, is in your hands.

"* * * *

"It is hard to say MacLaren is in anyone's best interest because it is a hard thing to say. It's a hard pill to swallow. But I do believe for all those reasons I've mentioned: the gang ties; the access to firearms; the polysubstance abuse; the requiring a very high level of structure and supervision to really thrive like you have; the fact that we are out of OYA non-correctional placements; all those (indiscernible) DEL, electronic monitoring."

As demonstrated by the foregoing, the juvenile court did take the detrimental impact of incarceration into account—it just determined that in this specific case, the structure of MacLaren was better suited than either parent's home to lead youth to a successful outcome. We have examined the record, and it supports the juvenile court's findings and shows that the court provided legally permissible reasons for its decision. Thus, we determine that the juvenile court did not abuse its discretion, and we affirm.

Affirmed.